IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| MAUI VACATION RENTAL ASSOCIATION, INC., a Hawaii corporation, | ) ) ) | CIVIL NO.  07-00495 JMS/KSC |
| | ) | ORDER DENYING DEFENDANTS' |
| | ) | MOTION TO DISMISS COMPLAINT |
| Plaintiff, | ) | BASED ON LACK OF STANDING, |
| | ) | AND GRANTING DEFENDANTS' |
| vs. | ) | MOTION TO DISMISS COMPLAINT |
| | ) | FOR FAILURE TO STATE A CLAIM |
| COUNTY OF MAUI; JEFF HUNT, | ) | UPON WHICH RELIEF CAN BE |
| Director of MAUI COUNTY | ) | GRANTED |
| PLANNING COUNTY PLANNING | ) | |
| DEPARTMENT, as an individual, and | ) | |
| DOES 1-10, inclusive; | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**<u>ORDER DENYING DEFENDANTS' MOTION TO DISMISS COMPLAINT BASED ON LACK OF STANDING, AND GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

## I. <u>INTRODUCTION</u>

On September 28, 2007, Plaintiff Maui Vacation Rental Association, Inc. ("Plaintiff" or "MVRA") filed a Complaint seeking declaratory and injunctive relief to prevent Defendant County of Maui ("County") and Jeff Hunt, Director of the County Planning Department ("Hunt"), (collectively, "Defendants"), from enforcing the current laws that prohibit unpermitted transitional vacation rentals ("TVRs") from operating.  Plaintiff contends that the County had a long-standing

policy and agreement with MVRA not to enforce these laws until new, less cumbersome permitting laws applicable to TVRs were enacted.

Currently before the court is Defendants' Motion to Dismiss, which asserts that MVRA lacks standing, and that the Complaint fails to state a claim upon which relief can be granted. For the reasons stated herein, the court DENIES Defendants' Motion to Dismiss based on lack of standing, and GRANTS Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted.

## II. <u>BACKGROUND</u>

### A.   **Factual Background**

Plaintiff is an association formed "to legitimize the existence of Maui vacation rentals on residential, agricultural and rural zoned land, and to promote compliance with County and State regulations, such that local government, visitors, residents and owners of vacation properties benefit mutually." Compl. ¶ 13, *quoting* MVRA Charter. In its Complaint, Plaintiff seeks equitable and declaratory relief preventing the County from enforcing laws on TVRs, defined as properties that are rented for periods of less than 180 days per year by a visitor or person who does not use the property as a primary residence. *Id.* ¶ 15, *citing* Maui County Code ("MCC") § 19.04.

While the County laws require that most TVRs first receive a permit to operate, according to the Complaint, these laws have not been enforced for years.  In 1997, the County opted against broader TVR legislation, and instead passed a "Bed & Breakfast" ("B&B") ordinance governing B&B TVRs, defined as rentals where the operator occupies the same dwelling as the guests, and the property is not in a rural or agricultural-zoned area.[1]  *Id.* ¶ 16.  After the B&B ordinance passed, the County Planning Department advised non-B&B TVRs not to apply for permits because the County was formulating new regulations applicable to all TVRs.  *Id.* ¶ 17.  Based on this advice, many TVRs did not apply for permits and believed they were in "compliance."  *Id.*  Despite the County's assurance, no new TVR regulations have issued.

Up until 2001, the County utilized an "enforcement by complaint" policy on TVRs -- the County enforced TVR permitting requirements only after receiving a complaint from the public.  *Id.* ¶ 20.  In 2001, however, the County set aside this policy and increased enforcement against TVRs.  *Id.*  After County Council meetings regarding this new enforcement policy, Planning Director John Min agreed to go back to the "enforcement by complaint" policy.  *Id.*  Min further agreed: (1) to enact a "moratorium" policy allowing TVRs with pending permit

---

[1]  During the hearing, Plaintiff asserted that it was not seeking relief for B&B TVRs.

applications to operate during the permitting process, (2) that existing TVRs in agricultural and rural zoned areas could apply for a County Conditional Permit and State Special Permit, and (3) TVRs could initiate the application process proactively, or wait for contact from the County Zoning Enforcement Division. *Id.* ¶ 21.  MVRA reduced these points of agreement to writing on November 1, 2001, which both Min and the Vice President of MVRA signed.  *Id.*; *see also* Ex. 1 to Compl.[2]

After the November 1, 2001 agreement, approximately 80 TVR permit applications were submitted.  *Id.* ¶ 22.  Of these applications, only 8 were processed and approved, and 65-70 were never processed due to the length of time it took to complete the processing of each application.  *Id.*  These 65-70 applicants were treated inconsistently:  some applicants were contacted and given a choice whether to proceed or delay processing until a new ordinance was passed; others were not given a choice and either held in abeyance or processed; and others were approved, but never scheduled for hearing by the County.  *Id.* ¶ 25.  Finally, other

---

[2]  By considering the November 1, 2001 document attached to the Complaint, the court does not convert Defendants' Motion to Dismiss into one for summary judgment.  *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) ("When a plaintiff has attached various exhibits to the complaint, those exhibits may be considered in determining whether dismissal was proper without converting the motion to one for summary judgment." (citation omitted)).

TVRs were told by the Planning Department that they should wait to apply for a permit until a new law was enacted. *Id.* ¶ 23.

From 2001 until July 2007, the County did not enforce the permitting laws on TVRs. As of July 2007, and retroactive to February 12, 2007, however, the County lifted the moratorium and decided to issue notices of violation to all known TVRs. *Id.* ¶ 27. After a meeting and hearing on the matter, the County again revised its stance on TVR enforcement and determined that January 1, 2008 will be the cutoff date after which no non-permitted TVRs will be allowed. *Id.* This cutoff applies equally to those TVRs who already submitted an application in accordance with the November 1, 2001 agreement. *Id.* ¶ 28.

## B.     Procedural Background

The Complaint states the following causes of action: (1) 42 U.S.C. § 1983 violation of Plaintiff's substantive due process rights, procedural due process rights, and equal protection rights; (2) breach of express and implied contract; (3) breach of implied covenant of good faith and fair dealing; (4) equitable estoppel; and (5) maintenance of illegal customs and policies. Plaintiff seeks (1) preliminary and permanent injunctive and declaratory relief as necessary to allow the members of MVRA to conduct their business; (2) an order

of specific performance of the express and implied agreement between the parties; and (3) attorneys' fees and costs.

On October 23, 2007, Defendants filed a Motion to Dismiss the complaint for lack of subject matter jurisdiction and failure to state a claim. On November 15, 2007, Plaintiff filed an opposition, and on November 21, 2007, Defendants filed a reply. A hearing was held on December 3, 2007. During the hearing, the court ordered that the parties provide supplemental briefing on Plaintiff's due process claims to: (1) identify Plaintiff's asserted property and/or liberty interest, (2) describe whether the identified interest is created by or relates to a specific law, ordinance, or other understanding, and (3) explain whether the interest is recognized as a *protected* interest under Hawaii law, i.e., whether the County has discretion in recognizing and/or granting the identified interest. Plaintiff submitted its supplemental brief on December 7, 2007, and Defendants submitted theirs on December 14, 2007.

### III.  STANDARDS OF REVIEW

**A.    Standing**

"For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining

6

party."[3]  *Graham v. FEMA*, 149 F.3d 997, 1001 (9th Cir. 1998) (*quoting Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  "A plaintiff has the burden of establishing the elements required for standing."  *Takhar v. Kessler*, 76 F.3d 995, 1000 (9th Cir. 1996); *Tosco Corp. v. Cmty. for a Better Env't*, 236 F.3d 495, 499 (9th Cir. 2001).

## B.     Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"  When reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, a court takes the factual allegations in the complaint as true and construes them in the light most favorable to the plaintiff.  *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001).  "Conclusory allegations of law . . . are insufficient to defeat a motion to dismiss."  *Id.*  However, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1960 (2007) (explaining that the statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that a complaint should not be dismissed "unless it appears beyond doubt that the

---

[3]  The court rejects Defendants' assertion that it may present its motion as a "speaking motion" in which no presumptive truthfulness attaches to the allegations of the complaint.  *See* Defs.' Br. 5.  While it is true that *some* Rule 12(b)(1) motions allow the court to look beyond the allegations of the complaint, this is not the proper standard of review for a motion to dismiss for lack of standing.

plaintiff can prove no set of facts in support of his claim which would entitle him to relief," describes the "breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival."). "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

## IV. <u>ANALYSIS</u>

### A.    MVRA's Standing to Bring Suit

"[T]he prudential doctrine of standing has come to encompass several judicially self-imposed limits on the exercise of federal jurisdiction." *United Food & Commercial Workers Union Local 751 v. Brown Group*, 517 U.S. 544, 551 (1996) (citation and quotation signals omitted). "The doctrine of associational standing permits an organization to "'sue to redress its members' injuries, even without a showing of injury to the association itself.'" *Oregon Advocacy Center v. Mink*, 322 F.3d 1101, 1109 (9th Cir. 2003) (*quoting United Food*, 517 U.S. at 552). As outlined in *Hunt v. Washington State Apple Adver. Comm'n,* 432 U.S. 333, 343 (1977), standing of an association is determined by a three-prong test:

> [A]n association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are

germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

"[O]nce an association has satisfied *Hunt's* first and second prongs assuring adversarial vigor in pursuing a claim for which member Article III standing exists, it is difficult to see a constitutional necessity for anything more." *United Food*, 517 U.S. at 556 (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-56 (1992)).

The third associational standing requirement is prudential, as opposed to constitutional, and focuses on "matters of administrative convenience and efficiency, not on elements of a case or controversy within the meaning of the Constitution." *Id.* at 557. This third requirement guards against the "risk that the damages recovered by the association will fail to find their way into the pockets of the members on whose behalf injury is claimed." *Id.* For example, where an association seeks damages on behalf of its members, the damages claims may not be common to the entire membership, and thus, "both the fact and extent of injury [may] require individualized proof." *Warth*, 422 U.S. at 515-16. In comparison, where "the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supposed that the remedy, if granted, will inure to the benefit of those members of the association actually injured." *Id.* at

515; *see also Colum. Basin Apartment Ass'n v. City of Pasco*, 268 F.3d 791, 799

(9th Cir. 2001) (finding third prong met because declaratory and injunctive relief

"do not require individualized proof").  Therefore, "'individual participation' is

not normally necessary when an association seeks prospective or injunctive relief

for its members," but is "required in an action for damages to an association's

members." *United Food*, 517 U.S. at 546.

Defendants argue that Plaintiff cannot meet this third "participatory"

prong for standing because both the claims asserted by Plaintiff and the relief

requested requires the participation of Plaintiff's individual members in this

action.  *See* Defs.' Br. 9-10 (arguing that the "specific circumstances of one

member of the organization will be different from the next" such that the court

would need to take into account these individualized facts in assessing the claims

and granting equitable relief).  Specifically, Defendants point to the fact that each

TVR presents a unique set of facts based on the particular permitting and zoning

laws applicable to the property, and whether the individual applied for a permit,

was told not to apply for a permit, or otherwise relied on County statements not to

apply.  Plaintiff responds that the relief requested is generally applicable to all its

members, and the court need not evaluate specific facts of any individualized

application.  Pl.'s Opp'n 11-12.

10

The Ninth Circuit has not specified what level of individualized participation of an association's members triggers a denial of associational standing where no monetary damages are sought. *See Coal. of Human Advocates for K9's & Owners v. City & County of S.F.*, 2007 WL 641197, at *5 (N.D. Cal. Feb. 27, 2007) (noting unawareness of any Ninth Circuit decision); *see also Pennsylvania Psychiatric Soc'y v. Green Spring Health Servs., Inc.*, 280 F.3d 278, 286-87 (3d Cir. 2002) (adopting a test allowing for association standing if proof as to member circumstances were "limited" as opposed to "requiring a fact-intensive-individual inquiry"). Rather, the Ninth Circuit appears to apply a liberal standard of standing, finding that the third prong is satisfied where an association seeks declaratory relief only. *See Colum. Basin Apartment Assoc.*, 268 F.3d at 799 (finding third prong met because "such forms of [declaratory] relief do not require individualized proof"); *Associated Gen. Contractors of Am. v. Metro. Water Dist. of S. Cal.*, 159 F.3d 1178, 1181 (9th Cir. 1998) ("Individualized proof from the members is not needed where, as here, declaratory and injunctive relief is sought rather than monetary damages."); *Associated Gen. Contractors of Cal., Inc. v. Coal. for Econ. Equity*, 950 F.2d 1401, 1408 (9th Cir. 1991) (finding that association seeking to prevent defendant from enforcing project labor agreement had standing because requested declaratory and injunctive relief did not require

individualized proof by association's members); *Alaska Fish & Wildlife Fed'n and Outdoor Council, Inc. v. Dunkle*, 829 F.2d 933, 937-38 (9th Cir. 1987) (finding third prong satisfied because association requested declaratory relief rather than money damages, such that its members need not participate directly in the litigation).

Because the law of the Ninth Circuit favors standing where no monetary damages are sought and the claims asserted here do not require the participation of individual members in the lawsuit, the court finds that MVRA has standing to maintain this action.  MVRA alleges causes of action based on Defendants' failure to process permits in a timely manner and an alleged breach of an agreement that non-permitted TVRs could continue to do business while the County adopted new TVR laws.  Plaintiff seeks only declaratory relief to prevent the County from enforcing the current permitting laws.  While some members within MVRA may be subject to different permitting and zoning laws, the participation of each member is not necessary to determine whether Defendants (1) violated MVRA's constitutional rights by breaching an agreement not to enforce the TVR permitting laws and failing to have in place or observe procedurally and substantively sound procedural mechanisms, Compl. ¶ 32, (2) breached express and implied contracts by "starting a blanket 'crackdown'" on

all known TVRs, Compl. ¶ 40, (3) breached the implied covenant of good faith and fair dealing by failing to inform and cooperate with Plaintiff in performing the agreements, Compl. ¶ 45, (4) should be equitably estopped from taking enforcement action against MVRA contrary to the terms of their agreements, Compl. ¶ 49, or (5) maintained illegal customs in enforcing its TVR permitting laws, Compl. ¶ 53.

Defendants' reliance on *Comm. for Reasonable Regulation of Lake Tahoe v. Tahoe Reg'l Planning Agency*, 365 F. Supp. 2d 1146 (D. Nev 2005) ("*Lake Tahoe*"), is unavailing. This case is not controlling on this court, and is nonetheless distinguishable on its facts. In *Lake Tahoe*, Plaintiff challenged an ordinance regulating the "size, color, appearance, visibility, and other aspects of residential housing on littoral and shoreland properties," and asserted an as-applied takings claim that the ordinance represented a taking of its members' property without just compensation. *Id.* at 1148. The court discussed that a takings claim requires an ad hoc, fact-based inquiry into "(1) the economic impact of the regulation on the property owner, (2) the extent to which the regulation has interfered with distinct investment-backed expectations, . . . (3) the character of the government invasion," and (4) "the reasonableness of a landowner's investment-backed expectations." *Id.* at 1161. The court found that "under the

13

*fact-specific legal test applied in this instance*, it is clear that the claim itself will require the participation of the Committee's members." *Id.* at 1163 (emphasis added).

In comparison, the claims here do not require any similar fact-specific legal test.[4]  As discussed above, each of Plaintiff's causes of action is based on Defendants' decision to lift the moratorium on non-enforcement of non-permitted TVRs and/or delay in processing TVR permit applications.  Inquiry into each of these claims does not require an individualized inquiry.  The court therefore finds that Plaintiff meets the third prong of *Hunt's* standing test.

///

///

///

---

[4]  The court also rejects Defendants' argument that the Ninth Circuit case law supporting standing where the plaintiff does not seek monetary damages is distinguishable because Plaintiff asserts claims based on the *way* the TVR permitting laws are enforced, as opposed to a facial attack on the law itself.  Even accepting this difference as relevant, such difference does not affect standing because Plaintiff alleges that the County plans to enforce the permitting laws against all non-permitted TVRs.  Further, the court is unable to find any Ninth Circuit decision drawing such a distinction, and the case law cited by Defendants at the hearing does not support their contention.  In *Warth v. Seldin*, 422 U.S. 490, 515-16 (1975), the Supreme Court found that an association did not have standing because the association sought monetary damages requiring individualized proof, and the association also failed to allege facts sufficient to make out a case or controversy had its members brought suit.  In *Western Min. Council v. Watt*, 643 F.2d 618, 624, 627 (9th Cir. 1981), the court did not analyze whether Plaintiff met the third prong of standing, but found lack of associational standing because Plaintiff's members had no standing and failed to allege any actual injury.

**B.     Plaintiff's Claims Fail to State a Claim Upon Which Relief Can Be Granted**[5]

**1.     Count I:  42 U.S.C. § 1983 Violations**

The Complaint alleges that Defendants violated Plaintiff's substantive due process rights, procedural due process rights, and equal protection rights by breaching an agreement with Plaintiff to not enforce the permitting laws, and "failing to have in place or observe procedurally and substantively sound procedural mechanisms to avoid the violation of constitutional rights."  Compl. ¶ 32.  Defendants argue that Plaintiff has failed to state a 42 U.S.C. § 1983 violation because the Complaint does not state a claim based on substantive or procedural due process, or under the Equal Protection Clause.  The court agrees.

**a.     Plaintiff's Due Process Claims**

"A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."  *Wedges/Ledges of Cal. v. City of Phoenix*, 24 F.3d 56, 62 (9th Cir. 1994) (*citing Bd. of Regents v. Roth*, 408 U.S. 564, 569 (1972)); *Action Apartment*

---

[5] In addition to the arguments addressed in the body of this Order, Defendants argue that (1) Plaintiff's allegations relating to former council-member Wayne Nishiki are barred by the two-year statute of limitations, and (2) Hunt is entitled to qualified immunity.  Because Plaintiff clarified in its Opposition that (1) it is not stating a claim against Nishiki, and (2) Hunt is named in his official, as opposed to individual capacity, the court need not address these issues.

*Ass'n, Inc. v. Santa Monica Rent Control Bd.*, ---F.3d---, 2007 WL 4225774, at *5 (9th Cir. Dec. 3, 2007) ("We have long held that a substantive due process claim must, as a threshold matter, show a government deprivation of life, liberty, or property." (quotations omitted)).   "To have a property interest, a person clearly must have more than an abstract need or desire." *Nunez v. City of L.A.*, 147 F.3d 867, 872 (9th Cir. 1998).  "A mere 'unilateral expectation' of a benefit or privilege is insufficient; the plaintiff must 'have a legitimate claim of entitlement to it.'"  *Id.* (*quoting Roth*, 408 U.S. at 577); *see also Doran v. Houle*, 721 F.2d 1182, 1186 (9th Cir. 1983) (The "mere fact a person has received a government benefit in the past, even for a considerable length of time, does not, without more, rise to the level of a legitimate claim of entitlement.").

Protected property interests are not created by the Constitution, but by "existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1164 (9th Cir. 2005) (*citing Roth*, 408 U.S. at 577).  "A reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms." *Wedges/Ledges of Cal.*, 24 F.3d at 62 (internal quotation omitted); *see also Town*

16

*of Castle Rock v. Gonzales*, 545 U.S. 748, 760 (2005) (noting that property interests arise only when the relevant state law provisions "truly ma[k]e [the conferral of the benefit] mandatory").

Based on the above, the court must: (1) identify the property or liberty interest Plaintiff asserts it was deprived of; (2) determine what specific law, ordinance, or other understanding the interest is created by and/or based on; and (3) determine whether Hawaii law recognizes the interest as a *protected* property interest; i.e., whether the County has discretion in recognizing and/or granting this property interest.

Because the parties did not sufficiently address this framework in their initial briefings, the court outlined this law during the December 3, 2007 hearing and ordered supplemental briefing on these issues. In its supplemental briefing, Plaintiff chose largely not to apply this framework, and instead argues against its application. Specifically, Plaintiff argues that the relevant analysis for its substantive due process claim is whether Defendants acted in an "arbitrary and capricious" manner or with "ill will," and does not require a protected property interest. *See* Pl.'s Supplemental Br. 1. Plaintiff's argument wholly lacks merit.

Plaintiff cannot up-end the Ninth Circuit's long-standing precedent requiring a property interest for substantive due process claims by relying on

17

overturned case law, state law decisions from other jurisdictions, or law review articles.  The one Ninth Circuit case Plaintiff does cite, *Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988), does not stand for Plaintiff's proposition that a property interest is unnecessary for substantive due process protection.  Pl.'s Supplemental Br. 2-3. *Bateson* establishes exactly the opposite -- that a protected property interest is a necessary component to a substantive due process claim.  Specifically, *Bateson* upheld the district court's finding that defendant violated a building permit applicant's substantive due process rights when it refused to issue a building permit even though the applicant had met all the requirements, and the code required issuance of the permit.  *Id.* at 1303-05.  *Bateson* therefore supports the court's framework that a property interest arises where government has no discretion in granting the identified interest.[6]

The court also rejects Plaintiff's argument that a separate category of cases exists which find a violation of substantive due process "where the governmental actors are driven by ill motives," regardless of whether the actor has

---

[6] Nor did *Bateson v. Geisse*, 857 F.2d 1300 (9th Cir. 1988), create a separate test for substantive, as opposed to procedural, due process claims.  The plaintiff based its substantive due process claim on the city council's refusal to issue a building permit, and its procedural due process claim on the council's refusal to approve plaintiff's minor plat.  For both these claims, the court determined whether Plaintiff had a protected property interest.  In contrast to the permit, the court found that the plaintiff had no entitlement to the proposed minor plat.  *Id.* at 1305.

discretion.  *See* Pl.'s Supplemental Br. 7.  Plaintiff cites *Bello v. Walker*, 840 F.2d 1124 (3d Cir. 1988), for this proposition, but fails to acknowledge that it was later overruled on this very point.  *See United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392, 394 (3d Cir. 2003) ("[W]e hold that *[County of Sacramento v. Lewis*, 523 U.S. 833 (1998)] has superceded prior decisions of our Court holding that a plaintiff asserting that a municipal land-use decision violated substantive due process need only show that the municipal officials acted with an 'improper motive.'").

Finally, the court rejects Plaintiff's argument that it can establish "possession of a property interest worthy of substantive due process" by merely alleging that a "decision limiting the intended land use was arbitrarily and irrationally reached."  Pl.'s Supplemental Br. 10.  *DeBlasio v. Zoning Board of Adjustment,* 53 F.3d 592, 600-01 (3d Cir. 1995), has been largely overruled, *see United Artists Theatre Circuit, Inc.*, 316 F.3d at 400, and seemingly conflicts with Ninth Circuit law.  *See also George Washington Univ. v. District of Columbia*, 318 F.3d 203, 207 (D.C. Cir. 2003) (recognizing that the Third Circuit differs from many other circuits, which look "to the degree of discretion to be exercised by state officials in granting or withholding the relevant permission" in determining the existence of a property interest in the land-use context).  Contrary to Plaintiff's

argument, a property interest arises where government lacks discretion in granting or recognizing the interest at issue.[7]  *See Wedges/Ledges*, 24 F.3d at 62 (finding that a protectible interest is created "if the procedural requirements are intended to be a 'significant substantive restriction' on . . . decision making.'" (*quoting Goodisman v. Lytle*, 724 F.2d 818, 820 (9th Cir. 1984)).

Thus, the court rejects as contrary to law Plaintiff's arguments that it need not have a property interest for its substantive due process claim to stand. Accordingly, the court now addresses: (1) the asserted property or liberty interest at issue, (2) the specific law, ordinance, or other understanding that the interest is created by and/or based on, and (3) whether Hawaii law recognizes the interest as a protected interest.

///

///

///

///

---

[7]  Plaintiff also cites to *Action Apartment Ass'n, Inc. v. Santa Monica Rent Control Board*, --- F.3d ---, 2007 WL 4225774, at *5 (9th Cir. Dec. 3, 2007), which broadly states "that landowners have a constitutionally protected property interest in their right to devote their land to any legitimate use." (citations and quotations omitted).  This general statement clearly does not attempt to overrule the large body of Ninth Circuit case law finding that a property interest exists where the government lacks discretion in granting the interest at issue.  Indeed, *Action Apartment Ass'n, Inc*. recognizes a property interest to use land for any *legitimate* use; the Maui County Code prohibits non-permitted TVRs.

I.    Plaintiff's asserted property interest[8]

From the Complaint, it is unclear what protectible interests Plaintiff claims are at issue.  In its Supplemental Brief, however, Plaintiff identified its asserted property interest as:

> [T]he right to avail oneself of the zoning laws, i.e., to apply for a permit and have it processed in accordance with the applicable laws and within the State-mandated time frame, and consequently, to own and to use one's property as allowed by law.

Pl.'s Supplemental Br. 9.

///

///

///

---

[8]  Plaintiff asserts that it also has a liberty interest in being free from entrapment by the County "affirmatively inducing them to rely on the County's non-enforcement and non-processing of permits."  Pl.'s Supplemental Br. 12.  Plaintiff cites no law that supports the proposition that a liberty interest arises under these facts, and the court could find none either. *Cf. City of Cuyahoga Falls v. Buckeye Comm. Hope Found.*, 538 U.S. 188, 200 (2003) ("Freedom from delay in receiving a building permit is not among these 'fundamental liberty interests.'"); *Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (describing the liberty interests protected by the Due Process Clause); *Kansas v. Hendricks*, 521 U.S. 346, 357 (1997) (noting that "freedom from physical restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action . . . [but] that liberty interest is not absolute" (citation and quotations omitted)); *Walker v. City of Kansas City*, 911 F.2d 80, 96 (7th Cir. 1990) (rejecting argument that plaintiff had a liberty interest in establishing go-go girls at his business).  Plaintiff was provided ample opportunity to identify a liberty interest in both its Opposition to the Motion to Dismiss and the supplemental briefing ordered by the court. Because Plaintiff has failed to state a cognizable liberty interest, and amending the Complaint would be futile, the court dismisses Plaintiff's substantive due process claim based on an asserted liberty interest without leave to amend the Complaint.

ii. The specific law, ordinance, or other understanding that the identified interest is created by and/or based on

While broadly claimed, Plaintiff's asserted "property right" relates to the County's laws that an applicant must follow in attempting to receive a permit to operate a TVR.  The court therefore outlines the relevant laws and ordinances governing TVR applications that this asserted right is based on.[9]

As a baseline, the MCC prohibits all TVRs,[10] except in hotel districts that explicitly authorize them.  MCC § 19.37.010; *see also* Hawaii Revised Statutes ("HRS") § 205-4.5 (describing permitted uses within an agricultural district).  If a TVR wishes to operate outside a hotel district, it may apply for a conditional permit or a special use permit.

An owner can apply for a conditional permit by filing an application with the County's Department of Planning.  MCC § 19.40.030.  The purpose of the conditional permit is:

---

[9]  The court "may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment, as long as the facts noticed are not subject to reasonable dispute." *Intri-Plex Tech., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (citation and quotation signals omitted).  The court therefore takes judicial notice of the Hawaii Revised Statutes, Maui County Code, and the Maui County Charter, without converting Defendants' Motion to Dismiss into one for summary judgment.

[10]  Because Plaintiff asserts that it does not bring this action on behalf of B&B owners, the court does not address the statutory framework specific to B&Bs only.

> [T]o provide the opportunity to consider establishing uses not specifically permitted within a given use zone where the proposed use is similar, related or compatible to those permitted uses and which has some special impact or uniqueness such that its effect on the surrounding environment cannot be determined in advance of the use being proposed for a particular location.

MCC § 19.40.010.

MCC § 19.40.070(A) describes when a conditional permit may be recommended:

> Upon finding by the appropriate planning commission that reasons justifying granting of a conditional permit exist, and that the proposed use would not be significantly detrimental to the public interest, convenience and welfare, and will be in harmony with the area in which it is to be located; issuance of a conditional permit may be recommended, subject to such terms and conditions and for such period of time as the facts may warrant.

*See also* MCC § 19.40.080(A) ("Conditional permits may be issued subject to such terms and conditions deemed reasonable and necessary to fulfill the intent and purposes of this title.").  Upon approval, "a conditional permit application shall be through enactment of an ordinance by the council, in accordance with the provisions of the charter."  MCC § 19.40.070(D).

///

///

23

Applicants in state-designated rural and agricultural districts may also have to apply for a special use permit.[11]  HRS § 205-6(a) provides that:

> [T]he County Planning Commission may permit certain unusual and reasonable uses within agricultural and rural or Agricultural districts other than those for which the district is classified.  Any person who desires to use the person's land within an agricultural or rural district other than for agricultural or rural use, as the case may be, may petition the planning commission of the county within which the person's land is located for permissions to use the person's land in the manner desired.

*See also* HRS § 205-6(c) ("The county planning commission may under such protective restrictions as may be deemed necessary, permit the desired use, but only when the use would promote the effectiveness and objectives of this chapter.").

> iii.   Whether Hawaii recognizes the specified interest as a protected interest

Under Hawaii law, a constitutionally protected property interest includes "a benefit which one is entitled to receive by statute." *Brown v. Thompson*, 91 Haw. 1, 11, 979 P.2d 586, 596 (1999).  In the land use context, a granted permit may constitute a property interest.  *Id.; see also Cassidy v. State of*

---

[11]  HRS § 206-5(a) delegates the power to grant special use permits to the counties, subject to approval by the state land use commission where the area is greater than fifteen acres or the land is designated as "important agricultural lands."  *See* HRS § 206-5(d).

*Haw.*, 915 F.2d 528, 530 (9th Cir. 1990) (finding no property interest under Hawaii state law where permit-holder left boat slip for more than 14 days, which caused his permit to automatically expire); *Weinberg v. Whatcom County*, 241 F.3d 746, 753 (9th Cir. 2001). "A landowner may also have a protected property interest in a subdivision plan or permit application where the landowner has complied with all requirements of the applicable regulations, and the permit issuing authority has no discretion to deny the permit." *Koloa Marketplace, LLC v. County of Kauai*, 2007 WL 2247797, at *13 (D. Haw. Jul. 31, 2007) (*citing Bateson*, 857 F.2d at 1303).

In comparison, an applicant does not have a protected property interest in a permit "where the permit scheme is entirely discretionary." *Id.* at *13 (*citing Wedges/Ledges*, 24 F.3d at 62); *see also Keahole Def. Coal., Inc. v. Bd. of Land & Natural Res.*, 110 Haw. 419, 433-34, 134 P.3d 585, 599-600 (2006) ("It is well settled that when a governmental agency has discretion in granting a license, parties such as Waimana do not have a legitimate claim of entitlement.") (*citing with approval Thornton*, 425 F.3d at 1164 (stating that "a statute that grants the reviewing governmental body unfettered discretion to approve or deny [a state operating license] application does not create a property right"); *Denning v. Maui County*, 52 Haw. 653, 658, 485 P.2d 1048, 1051 (1971) ("Mere good faith

expectancy that a permit will issue does not create in a property owner a right to continue proposed construction.").

Thus, in determining whether a permit applicant has a protected property interest, "the key inquiry is whether the agency has discretion to grant or deny the application."[12]  *Koloa Marketplace, LLC*, 2007 WL 2247797, at *12 (*citing Erdelyi v. O'Brien*, 680 F.2d 61, 63 (9th Cir. 1982)).  Specific to this action, to have a constitutionally protected interest in "the right to avail oneself of the zoning laws, i.e., to apply for a permit and have it processed in accordance with the applicable laws and within the State-mandated time frame, and consequently, to own and to use one's property as allowed by law," *see* Pl.'s Supp.

---

[12]  A property interest may, in certain instances, be created through custom or mutual understanding.  *See Cassidy v. State of Hawaii*, 915 F.2d 528, 531 (9th Cir. 1990) (*citing Perry v. Sinderman*, 408 U.S. 593, 602-03 (1972) (policies and practices may create legitimate claim of entitlement)).  However, not all customs create a property right.  "A constitutional entitlement cannot 'be created-as if by estoppel-merely because a wholly and *expressly* discretionary state privilege has been granted generously in the past.'" *Id. (quoting Connecticut Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981)); *see also Punikaia v. Clark*, 720 F.2d 564, 570 (9th Cir. 1983) (finding state's continuous operation of nursing home for 30 years was not a "custom" generating a property interest).  Such principle is inapplicable here because any statements by County employees that no permits were necessary directly contradicted the law prohibiting unpermitted TVR operations.  *See Baden v. Koch*, 638 F.2d 486, 492 (2d Cir. 1980) ("[M]utual understandings and customs could not create a property interest for purposes of due process when they are contrary to the express provisions of regulations and statutes."); *Brett v. Jefferson County*, 123 F.3d 1429, 1434 (11th Cir. 1997) ("While protected property interests in continued employment can arise from the policies and practices of an institution, a property interest contrary to state law cannot arise by informal custom." (citations omitted)); *see also Perry*, 408 U.S. at 601-02 n.7 (noting that any "mutually explicit understandings" that support a "legitimate claim of entitlement" must stem from "an independent source such as state law" (citation and quotation signals omitted)).

Br. 9, the County, at a minimum, must have "significant substantive restriction[s]" in determining whether to grant a permit. *See Wedges/Ledges*, 24 F.3d at 62 (citation and quotation omitted).  No such limitations exist here.

The County maintains full discretion in determining whether to grant conditional permits and special use permits.  A conditional permit *may be recommended* "[u]pon finding by the appropriate planning commission that reasons justifying granting of a conditional permit exist, and that the proposed use would not be significantly detrimental to the public interest, convenience and welfare, and will be in harmony with the area in which it is to be located."  MCC § 19.40.070(A); *see also* MCC § 19.40.080(A) ("Conditional permits *may* be issued subject to such terms and conditions deemed reasonable and necessary to fulfill the intent and purposes of this title.") (emphasis added).  For a special use permit, "[t]he county planning commission *may* under such protective restrictions as may be deemed necessary, permit the desired use, but only when the use would promote the effectiveness and objectives of this chapter."  HRS § 205-6(c) (emphasis added); *see also* HRS § 205-6(c) ("The county planning commission *may* under such protective restrictions as may be deemed necessary, permit the desired use, but only when the use would promote the effectiveness and objectives of this chapter." (emphasis added)).  As the statutory language for both permitting

27

processes makes clear, even where the appropriate commission finds that reasons justify granting a permit, it is not required to grant a permit.[13]   Stated differently, even if an applicant satisfies all of the permit conditions, the County nonetheless retains discretion to deny the application.[14]   *See Koloa Marketplace, LLC*, 2007 WL 2247797, at *14 (finding applicant had no property interest where zoning ordinance did not require planning commission to grant project development or permits upon satisfaction of certain criteria).  Plaintiff therefore cannot establish an entitlement to either this process or the permits themselves.

Plaintiff argues that it can nonetheless state a procedural due process claim based on the County's delay in processing permit applications.  The court disagrees.  A protected property interest is a "threshold requirement" to any due process claim.  *See supra* at Section (IV)(B)(1)(a).  Delays in the application process cannot create a property interest where no interest existed in the first instance.  *See Thornton*, 425 F.3d at 1160 (affirming finding that plaintiff had no

---

[13]   The court therefore rejects Plaintiff's argument that the permitting laws have "clear criteria" which if met, require a permit to issue.  *See* Pl.'s Supplemental Br. 19-20.  Indeed, Plaintiff was warned in 2001 that there would be no guarantees that applications would be granted.  *See* Ex. 1 to Compl. ("[T]he outcome of the application will be the result of the established process - and there is no guarantee of a favorable determination.").

[14]   Even where the appropriate commission suggests approval of a permit, the Maui council maintains discretion in determining whether to approve the permit through enactment of an ordinance, and the Mayor holds veto power.  *See* MCC § 19.40.070(D) (Upon approval, "a conditional permit application shall be through enactment of an ordinance by the council, in accordance with the provisions of the charter.").

protected interest in timely approval of renewal application because city has

discretion in granting application).  It follows that the MCC's time limits for

processing applications do not create a property interest either.  *See* MCC

§ 19.510.010(A).

The court also rejects Plaintiff's argument that HRS § 91-13.5

requiring that "an agency shall adopt rules that specify a maximum time period to

grant or deny a business or development-related permit . . . ." and that "all such

issuing agencies shall take action to grant or deny any application . . . within the

established maximum period of time, or the application shall be deemed

approved" creates any protectible property interest.  "Agency," as used in HRS

§ 91-13.5, is defined as "each state or county board, commission, department, or

officer authorized by law to make rules or to adjudicate contested cases, except

those in the legislative or judicial branches," *see* HRS § 91-1, and does not include

the Maui County Council.  *See Sandy Beach Def. Fund v. City Council of the City*

*& County of Honolulu*, 70 Haw. 361, 370, 773 P.2d 250, 257 (1989) ("We

conclude, therefore, based upon the plain language of HRS § 91-1 and its

legislative history, that the City Council, as the legislative branch of the County, is

not subject to the procedural requirements of HAPA when acting in either a

legislative or non-legislative capacity.").  Further, even if this language were

applicable to conditional or special use permit applications, it still does not give rise to a protected property interest because the overall statutory scheme is nonetheless discretionary.  *See Koloa Marketplace, LLC*, 2007 WL 2247797, at *18-19 (discussing case law from other jurisdiction to reject argument that "deemed approved" language in permit process gives rise to a protected property interest).

In sum, Plaintiff has failed to allege a protected property interest that would support either a procedural or substantive due process claim.  The court further concludes that granting Plaintiff leave to amend its due process claim would be futile.  *See Flowers v. First Hawaiian Bank*, 295 F.3d 966, 976 (9th Cir. 2002) ("A district court . . . does not abuse its discretion in denying leave to amend where amendment would be futile."); *Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 356 (9th Cir. 1996) (affirming the district court's denial of leave to amend "[b]ecause the proposed claim would be redundant and futile").  Accordingly, the court GRANTS Defendants' Motion to Dismiss Claim I of the Complaint for failure to state a due process claim without leave to amend.[15]

_____

[15]  The court provided Plaintiff the opportunity through supplemental briefing to identify the property or liberty interests it asserted were at issue for its due process claims.  Thus, in making its futility findings as to Count I's due process claims, the court considers not only the Complaint, but also Plaintiff's Opposition to Defendants' Motion to Dismiss and Plaintiff's Supplemental Opposition.

b.      Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr*., 473 U.S. 432, 439 (1985) (*citing Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

A plaintiff can state an equal protection claim in one of two ways. One way is to allege that "defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *See Barren v. Harrington*, 152 F.3d 1193, 1194-95 (9th Cir. 1998) (*citing Washington v. Davis*, 426 U.S. 229, 239-40 (1976)).  Under this theory, the plaintiff must show that the defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.  *Thornton*, 425 F.3d at 1167.  If the acts in question *do not* involve a suspect classification, a plaintiff can alternatively establish an equal protection "class of one" claim by alleging that it "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).

31

The Complaint contains no facts stating how Plaintiff's equal protection rights were violated.  *See* Compl. ¶ 32 ("In breaching their agreement with Plaintiff and failing to have in place or observe procedurally and substantively sound procedural mechanisms to avoid the violation of constitutional rights, Defendants have violated the procedural and substantive due process and equal protection rights of Plaintiff and Plaintiff's individual members.").  "Although for the purposes of this motion to dismiss [the court] must take all the factual allegations in the complaint as true, [the court is] not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citations omitted).  While the Complaint does state in a conclusory fashion that Plaintiff's equal protection rights were violated, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Bruns v. Nat'l Credit Union Admin*., 122 F.3d 1251, 1257 (9th Cir. 1997) *(quoting Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982)).  Thus, the allegations in the Complaint, standing alone, are insufficient to establish that Plaintiff is entitled to relief.  *See* Fed. R. Civ. P. 8(a)(2) (stating that a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief").

Plaintiff's Opposition appears to concede that it has not met its Federal Rule of Civil Procedure 8(a)(2) requirements by alleging new facts to claim that the County acted with intent to discriminate against Plaintiff on the basis of race.  *See* Pl.'s Opp'n 14.  Plaintiff then takes a completely different tack in its Supplemental Brief by arguing that Defendants intentionally treated TVR permit applicants differently from other types of home-based businesses.  Pl.'s Supplemental Br. 16.  Plaintiff's new allegations cannot change the fact that the Complaint itself fails to allege facts sufficient to support an equal protection violation.  However, given Plaintiff's arguments, the court cannot say that amending the Complaint would be futile.  The court GRANTS Defendants' Motion to Dismiss Count I of the Complaint for failure to state an equal protection claim, with leave for Plaintiff to amend the Complaint.

### 2. *Count II:  Breach of Contract*

Defendants argue that this claim should be dismissed because (1) no enforceable contract against the County exists, and (2) the documents do not constitute a plea bargain.  The court agrees.

The elements of a contract are: "'an offer and acceptance, consideration, and parties who have the capacity and the authority to agree as they do.'" *In re Doe*, 90 Haw. 200, 208, 978 P.2d 166, 174 (1999) (*quoting Dowsett v.*

33

*Cashman*, 2 Haw. App. 77, 83, 625 P.2d 1064, 1068 (1981)).  Further, "'[t]here

must be mutual assent or a meeting of the minds on all essential elements or terms

in order to form a binding contract.'"  *Carson v. Saito*, 53 Haw. 178, 182, 489 P.2d

636, 638 (1971) (*quoting Honolulu Rapid Transit Co. v. Paschoal*, 51 Haw. 19, 26-

27,  449 P.2d 123, 127 (1968)).

The Maui County Charter § 9-18 expressly limits who may sign

contracts on behalf of the County:

> Before execution, all written contracts to which the county is a
> party shall be approved by the corporation counsel as to form
> and legality.  All such contracts shall by signed by the mayor,
> except that contracts for purchase of materials, supplies,
> equipment, personal services, and public works contracts shall
> be signed by the director of finance.

Accordingly, a contract is formed only where the document is approved by

corporation counsel and signed by the mayor (or as required, the director of

finance).  *See also S. Foods Group, L.P. v. Hawaii Dep't of Educ.*, 89 Haw. 443,

456, 974 P.2d 1033, 1046 (1999) (stating that Hawaii Department of Education

would not be bound by contract because agent "could not bind the Government

beyond his actual authority"); *Wong v. City & County of Honolulu*, 333 F. Supp. 2d

942, 958 (D. Haw. 2004) (finding no contract where plaintiff provided no evidence

of elements of contract claim, including that county employee had power to bind

the city and county in contract); *Gamewell Co. v. County of Honolulu*, 33 Haw. 817, 1936 WL 4409, at *3 (Haw. Terr. 1936) (citing with approval case law of other jurisdictions finding that "the absence of an endorsement required by the statute renders the contract void").

Here, the purported "contract" is signed by only the County Planning Director, who does not have authority to enter into contracts on behalf of the County. *See* Maui County Charter § 8-8.3 (describing powers, duties, and functions of planning director); *id.* § 9-18 (describing County contract requirements). Because this document was neither approved by County corporation counsel nor signed by the mayor, this document is not a contract, and Plaintiff cannot state a breach of contract claim.[16]

Plaintiff nonetheless argues that its breach of contract claim "does not require a finding of the traditional elements of an express contract" because this "contract" is enforceable in equity. *See* Pl.'s Opp'n 20-21. Plaintiff's argument is unavailing -- equity cannot support a breach of contract claim where no contract exists. *See Brescia v. N. Shore Ohana*, 115 Haw. 477, 499, 168 P.3d 929, 951 (2007) ("Estoppel 'cannot be applied to actions for which the agency or agent of

---

[16] In any event, the Min document lacks other indicia of a contract. For example, it does not recite any consideration, and refers to itself as "minutes" of a meeting.

the government has no authority.'") (*quoting Turner v. Chandler*, 87 Haw. 330, 334, 955 P.2d 1062, 1066 (Haw. App. 1998) (other citation omitted)); *see also City of Santa Cruz v. Pac. Gas & Elec. Co.*, 82 Cal. App. 4th 1167, 1177 (2000) (finding that "estoppel cannot operate where the contract relied on to create the estoppel is outside the corporate powers of the governmental agencies or officials" (citation and quotation signals omitted)); *see also Properties Four, Inc. v. State*, 105 P.3d 416, 420 (Wash. App. 2005) ("If a state agent lacks legal authority, 'no void act of theirs can be cured by aid of the doctrine of estoppel.'"); *City of Denton v. Mun. Admin. Servs., Inc.*, 59 S.W.3d 764 (Tex. App. 2001) ("Estoppel and ratification doctrines will not make void contracts enforceable."); *Brennan v. Chatham County Comm'rs*, 433 S.E.2d 597, 599 (Ga. App. 1993) ("A governmental body cannot be estopped from denying the validity of a void agreement.  The mere fact that the city may have operated under some form of agreement with appellant for a period of time does not change the result.") (quotations omitted)); *York County v. King's Villa, Inc.*, 309 S.E.2d 332, 334 (Va. 1983) ("[T]hose who deal with public officials must, at their peril, take cognizance of their power and its limits.").

The court also rejects Plaintiff's argument that the documents attached to its Complaint are fairly read as a plea agreement between the County and TVRs

that were in violation of the County's permitting laws.  These documents do not meet any of the requirements of a plea bargain, *see* Haw. R. Penal P. 11, and are not a contract between Plaintiff and Defendants.

The court concludes that Plaintiff has failed to state a breach of contract claim, and granting Plaintiff leave to amend this claim would be futile. Accordingly, the court GRANTS Defendants' Motion to Dismiss Claim II of the Complaint without leave to amend.

### 3.    *Count III:  Breach of Implied Covenant of Fair Dealing*

"[E]very contract contains an implied covenant of good faith and fair dealing that neither party will do anything that will deprive the other of the benefits of the agreement."  *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Haw. 120, 123-24, 920 P.2d 334, 337-38 (1996).[17]

The court need not determine whether the Hawaii Supreme Court would recognize a claim for breach of implied covenant of fair dealing arising from a contract with a municipality.  Rather, because the court finds that no contract

---

[17]  Despite this broad language, the Hawaii Supreme Court has indicated that this tort may have limited application.  *Best Place, Inc. v. Penn Am. Ins. Co.*, 82 Haw. 120, 132, 920 P.2d 334, 346 (1996) (noting that "policy considerations surrounding the adoption of the tort of bad faith in the insurance context are atypical and will not necessarily extend to all types of contracts."); *Francis v. Lee Enters.,* 89 Haw. 234, 238, 971 P.2d 707, 711 (1999) ("Other jurisdictions recognizing the tort of bad faith similarly limit such claims to the insurance context or situations involving special relationships characterized by elements of fiduciary responsibility, public interest, and adhesion.").

existed between Plaintiff and Defendants, Plaintiff's breach of implied covenant of good faith and fair dealing claim similarly fails.  The court further finds that granting Plaintiff leave to amend this claim would be futile.  Accordingly, the court GRANTS Defendants' Motion to Dismiss Count III of the Complaint without leave to amend.

### 4.    Count IV:  Equitable Estoppel

Defendants argue that Plaintiff cannot state an equitable estoppel claim upon which relief can be granted because Plaintiff has no right to rely on previous County administrations' enforcement policies.  The court concurs.

As applied to land development, Hawaii courts describe the doctrine of equitable estoppel as:

> [A] change of position on the part of a land developer by substantial expenditure of money in connection with his project in reliance, not solely on existing zoning laws or on good faith expectancy that his development will be permitted, but on *official assurance on which he has a right to rely* that his project has met zoning requirements, that necessary approvals will be forthcoming in due course, and he may safely proceed with the project.

*Life of the Land, Inc. v. City Council of City & County of Honolulu*, 61 Haw. 390, 453, 606 P.2d 866, 902 (1980) (emphasis added).  Courts interpret this standard as raising four questions: "(1) What reliance is 'good faith'; (2) what sums are

'substantial'; (3) what constitutes 'assurance' by officials; and (4) when does a developer have a right to rely on such assurances?" *County of Kauai v. Pac. Standard Life Ins. Co.*, 65 Haw. 318, 327, 653 P.2d 766, 774 (1982) (*quoting* Callies, *Land Use: Herein of Vested Rights, Plans, and the Relationship of Planning and Controls*, 2 U. Haw. L. Rev. 167, 174 (1979)).

Regarding "assurance," the key is *official* assurance -- "[e]stoppel 'cannot be applied to actions for which the agency or agent of the government has no authority.'" *Brescia*, 115 Haw. at 499, 168 P.3d at 952 (*quoting Turner*, 87 Haw. at 334, 955 P.2d at 1066 (other citation omitted)). "It is well accepted that a public employee not vested with decision making authority may not bind the state in its exercise of the police power." *Id.* at 500, 168 P.3d at 952.

For zoning estoppel, "[f]inal discretionary action constitutes official assurance." *County of Kauai*, 65 Haw. at 327, 653 P.2d at 774. "Zoning estoppel is not intended to protect speculative business risks. Thus, an expenditure made in compliance with underlying zoning but before final discretionary action will be disregarded for estoppel purposes." *Brescia*, 115 Haw. at 499, 168 P.3d at 952. This rule "preserves government control over development until the government's own process for making land use decisions leaves nothing to discretion . . . [and] will lead to predictable results consistent with the important public policy

39

considerations that underlie Hawaii's estoppel rule." *County of Kauai*, 65 Haw. at 328-29, 653 P.2d at 774.

Plaintiff bases its equitable estoppel claim on the Planning Director's assertion that it would not enforce the TVR permitting laws, and the County's failure to enforce the laws or issue permits for the past several years. As discussed in § (IV)(B)(1)(a) *supra*, the County maintains discretion in determining whether to grant a permit application. *See* MCC § 19.40.070(A) (A conditional permit *may be recommended* "[u]pon finding by the appropriate planning commission that reasons justifying granting of a conditional permit exist . . . ."); HRS § 205-6(c) ("The county planning commission may under such protective restrictions as may be deemed necessary, permit the desired use, but only when the use would promote the effectiveness and objectives of this chapter."). Accordingly, there has been no final discretionary action that would constitute an "official assurance" necessary to support Plaintiff's equitable estoppel claim. Plaintiff's good faith expectancy that Defendants would allow Plaintiff's members to continue to operate without permits, without any final discretionary action by the County, cannot support this claim. *See Denning*, 52 Haw. at 658, 485 P.2d at 1051 ("Mere good faith expectancy that a permit will issue does not create in a property owner a right to continue proposed construction.").

40

The court therefore finds that Plaintiff has failed to state a claim for equitable estoppel, and granting Plaintiff leave to amend this claim would be futile. The court GRANTS Defendants' Motion to Dismiss Claim IV of the Complaint without leave to amend.

### 5.   *Count V:  Maintenance of Illegal Customs and Policies*

Plaintiff asserts that Count V of the Complaint is a *Monell* claim for maintenance of illegal customs and policies.  *See* Pl.'s Opp'n 28-31.

*Monell v. Department of Social Services*, 436 U.S. 658 (1978), held that a local government cannot be held liable under § 1983 on the theory of respondeat superior, but rather only when "action pursuant to official municipal policy of some nature caused a constitutional tort."  *Id.* at 691.  *Monell* does not create a separate cause of action for illegal customs, but recognizes that a municipality may be a proper defendant in a § 1983 action.  *See Segal v. City of N.Y.*, 459 F.3d 207, 219 (2d Cir. 2006) (holding that "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation").

41

The court GRANTS Defendants' Motion to Dismiss Count V of the Complaint on the basis that a "*Monell*" claim is not a separate claim from Count I of the Complaint.  The court further GRANTS leave for Plaintiff to amend its Complaint to allege municipal liability for an equal protection or First Amendment violation as part of Count I, and/or allege a separate First Amendment violation.[18]

## V.  CONCLUSION

For the reasons stated above, the court DENIES Defendants' Motion to Dismiss on the basis of standing, and GRANTS Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted.  Plaintiff may amend its Complaint to allege facts supporting an equal protection and/or First Amendment claim pursuant to 42 U.S.C. § 1983 consistent with this Order by

///

///

///

///

---

[18]  During a December 13, 2007 hearing, Plaintiff confirmed that it asserts a First Amendment violation, but the allegations in the Complaint are vague.  Count V of the Complaint alleges "[t]o the extent the enforcement policies are enforced discriminately and/or against those the County dislikes for speaking out against it, they also violate equal protection and first amendment rights, respectively."  Compl. ¶ 52.  At this time, the court does not address whether Plaintiff would have standing to bring this claim.

42

January 18, 2008.  Failure to file an Amended Complaint by that date will result in an automatic dismissal of this action.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, December 19, 2007.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Maui Vacation Rental Association, Inc. v. County of Maui, et al.*, Civ. No. 07-00495 JMS/KSC; Order Denying Defendants' Motion to Dismiss Complaint Based on Lack of Standing, and Granting Defendants' Motion to Dismiss Complaint for Failure to State a Claim upon Which Relief Can Be Granted